S09A0233, S09A0234. CARTER v. THE STATE (two cases).
(677 SE2d 71)

THOMPSON, Justice.

Appellants Valerie Johnson Carter and James Carter were jointly indicted, tried, and convicted for felony murder, with the underlying felony of distribution of oxycodone, in connection with the death of Debra Coley.[1] Because appellants raise similar issues on appeal, their cases have been consolidated. After reviewing the records on appeal, in both cases we affirm in part and vacate in part and remand to the trial court for resentencing.

1. Appellants challenge the sufficiency of the evidence to support the conclusion that distribution of oxycodone was a dangerous felony

---

[1] The crimes occurred on March 13, 2005. Appellants were indicted by a Houston County grand jury on May 30, 2006. The indictment charged each appellant with felony murder, distribution of oxycodone, possession of oxycodone with intent to distribute, and tampering with evidence. On September 13, 2007, James Carter was found guilty of all counts and Valerie Carter was found guilty of all counts except tampering with evidence. They were sentenced that same day to life imprisonment for the felony murder convictions and concurrent 30-year sentences for their distribution convictions. James Carter was sentenced on the tampering charge to an additional three years to run concurrent with his other sentences. Timely motions for new trial were filed and those motions, as amended, were denied on September 11, 2008. Notices of appeal were filed by appellants on September 18, 2008. The appeals were docketed in this Court on October 22, 2008 and submitted for decision on the briefs.

which caused the victim's death. We find the evidence adduced supports the finding that appellants' distribution of oxycodone, under the facts of this case, was a dangerous felony, and that appellants directly caused the victim's death in the commission of this felony. See *Hulme v. State*, 273 Ga. 676, 678 (544 SE2d 138) (2001). We also conclude that the evidence was sufficient to authorize the jury to find appellants guilty of the other charged crimes beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The evidence authorized the jury to find that in the early morning hours of March 13, 2005, appellants went to the home of the victim, who they knew to have a drug and alcohol problem and to have been in at least one drug treatment facility in the past. Appellants had spoken with the victim on the day of the crimes and knew that she had been drinking and taking unknown quantities of prescription drugs. When they arrived at her home, they described the victim as "messed up," with slurred speech and a lack of motor control. Nevertheless, appellants gave the victim, who was sitting in their truck, an intravenous injection of oxycodone causing the victim to "pass out." James Carter removed the needle from the victim's arm and appellants pulled the victim out of the truck and left her lying in her front yard. They then sped away, breaking up the needle and throwing it out the truck window. James Carter admitted to police that he may have been the one to kill the victim, but insisted that he "didn't mean to."

The medical examiner determined that the cause of death was multiple drug intoxication with a toxic level of oxycodone in the victim's body producing a fatal effect. Toxicology reports established that at the time of her death the victim had a blood alcohol level of .198 and she had present in her blood system .48 milligrams per liter of diazepam, .39 milligrams per liter of nordiazepam, and .55 milligrams per liter of oxycodone. A forensic toxicologist testified that the diazepam and nordiazepam were not at dangerous levels but the oxycodone was "well into the accepted toxic range." Police discovered an empty prescription bottle of oxycodone in Valerie Carter's name while searching appellants' home after their arrest. The prescription for 45 pills, which were unaccounted for, had been filled two weeks prior to the victim's death. Police also found the top to a syringe and a tourniquet in appellants' truck.

> [I]n Georgia, a defendant may be convicted of felony murder based on the underlying felony of distributing a controlled substance if that felony is inherently dangerous under the foregoing standards, and if the defendant directly

causes the death of the victim while in the commission of the felony.

*Hulme*, supra at 678. Because the evidence in this case establishes that appellants knew the victim had been drinking and taking narcotics to the extent she already was in a significantly altered state when they gave her the intravenous oxycodone injection, and that appellants provided the oxycodone injection which directly caused the victim's death, we conclude that the circumstances under which they committed the felony of distribution of oxycodone was a dangerous felony resulting in the victim's death within the meaning of the felony murder statute.

2. Appellants contend the trial court erred by denying their motions to sever their trials and that violations of their Sixth Amendment confrontation right occurred as a result. See *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).[2] In denying their motions, the trial court recognized that neither appellant implicated the other in their statements to police and thus, the admission of their statements at trial did not constitute a *Bruton* violation. "For the admission of a co-defendant's statements to constitute a *Bruton* violation . . . the statements standing alone must clearly inculpate the defendant." (Citations and punctuation omitted.) *Thomas v. State*, 268 Ga. 135, 137 (6) (485 SE2d 783) (1997). Appellants' statements separately admitting their presence at the victim's home did not inculpate the other, and James Carter's admission that he supplied the oxycodone did not inculpate Valerie Carter. It follows that the trial court did not abuse its discretion in denying the motions to sever on *Bruton* grounds. *Metz v. State*, 284 Ga. 614 (2) (a) (669 SE2d 121) (2008); *Moss v. State*, 275 Ga. 96, 98 (2) (561 SE2d 382) (2002).

3. The trial court did not err by denying appellants' requests for funds to hire an independent forensic toxicologist. In order to obtain funds to hire a scientific expert, an indigent defendant must disclose to the trial court, with a reasonable degree of precision, why certain evidence is critical, what type of scientific testimony is needed, what that expert proposes to do regarding the evidence, and the anticipated costs for services. *Roseboro v. State*, 258 Ga. 39 (3) (d) (365 SE2d 115) (1988). The decision whether to grant or deny a motion for the appointment of an expert rests within the trial court's sound

---

[2] In *Bruton*, the Court held that a defendant's Sixth Amendment right of confrontation is violated when: (a) co-defendants are tried jointly; (b) one co-defendant's statement is used to implicate the other co-defendant in the crime; and (c) the co-defendant who made the implicating statement employs his Fifth Amendment right not to testify and thus does not take the stand to face cross-examination about the statement.

discretion, and the trial court's decision will be upheld in the absence of an abuse of discretion. *Crawford v. State*, 267 Ga. 881 (2) (485 SE2d 461) (1997).

After reviewing appellants' motions for funds and conducting an ex parte hearing, the trial court granted their requests for funds to hire a forensic pathologist but reserved ruling on their requests for funds to hire an independent toxicologist because they had not demonstrated why their pathologist could not rely on the State's toxicology report in reaching his conclusion as to the cause of death. At no subsequent time did appellants present additional evidence to the court in support of their previously filed motions and they at no time renewed their motion for funds. In this circumstance, even assuming the alleged error has been preserved for appellate review, we find appellants failed to provide sufficient information necessary for the trial court to fully consider their requests. See *Finn v. State*, 274 Ga. 675 (2) (558 SE2d 717) (2002). Accordingly, we find no abuse of discretion.

4. Appellants contend the trial court erred by denying their motions to suppress statements they made during interviews with police. They argue that they were in police custody during the interviews and should have been advised of their rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

> A person is considered to be in custody and *Miranda* warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary.

(Punctuation omitted.) *Sewell v. State*, 283 Ga. 558, 560-561 (2) (662 SE2d 537) (2008). The record here shows that investigators received information that on the night of the crimes appellants had been at the victim's home. An investigator called appellants and asked if they would come to the Jones County Sheriff's Department for an interview. Appellants agreed, but when they had not arrived after an hour, the investigator called again and asked if they needed a ride. James Carter told the investigator they were south of Warner Robins because a friend had died, and arrangements were made for appellants to go to the Houston County Sheriff's Office because it was closer to their location. Appellants arrived at the station first, waiting in the parking lot until Jones County investigators arrived. Investigators then informed appellants that they were free to leave but invited them into the sheriff's office to talk. Accordingly, the evidence showed that appellants were not under formal arrest at any

time during their interviews and were told by investigators prior to the interviews that they were free to leave. We conclude that the trial court did not err when it determined that a reasonable person in appellants' situation would not have felt so restrained as to equate to a formal arrest. See *Quedens v. State*, 280 Ga. 355 (2) (629 SE2d 197) (2006).

5. Valerie Carter further asserts her statement was involuntary because she was drunk, intoxicated or seriously impaired by alcohol or narcotics at the time of the interview. During her interview, Valerie Carter admitted that she took two Xanax before coming to the sheriff's office because she was nervous but told investigators that she had not taken any oxycodone in the previous two days. Appellant presented no other evidence of intoxication at the motion to suppress hearing or when she raised this objection for the first time at trial. Investigators who conducted the interview testified that Valerie Carter did not appear to be under the influence of drugs or alcohol during the interview and that she was able to communicate with them in a lucid and coherent manner. The trial court overruled the objection and her recorded statement was played for the jury. Because the trial court's findings as to the voluntariness of the statement are supported by the evidence, we find no error in its admission at trial. See *Shelby v. State*, 265 Ga. 118 (2) (453 SE2d 21) (1995).

6. On the evening before trial, appellants notified the State of their intent to call Karen Brown as a witness to testify to both a hearsay statement purportedly made by the victim days before her death and a prior inconsistent statement of a prosecution witness. The State objected on the ground that appellants did not comply with proper discovery procedures. See OCGA § 17-16-8 (a). The trial court sustained the State's objection although it made no findings as to appellants' bad faith in failing to timely identify the witness. Appellants assert on appeal that the court erred in excluding Brown's testimony.

We find the exclusion of Brown's testimony was harmless error, if error at all, in light of the overwhelming evidence of appellants' guilt and conclude it highly probable that the exclusion of this evidence did not contribute to the jury's verdict. *Laney v. State*, 271 Ga. 194 (8) (515 SE2d 610) (1999).

7. Valerie Carter contends that the trial court erred by denying her motion for a continuance so that she could have more time to investigate her case, and more specifically, to review the autopsy report and obtain hospital and emergency reports. "Whether to grant a motion for continuance is entirely within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." (Citation and punctuation omitted.) *Davis v. State*,

279 Ga. 786, 787 (2) (621 SE2d 446) (2005). See OCGA § 17-8-22. Here, the charges against Valerie Carter had been pending for more than two years before trial. The record demonstrates that the prosecutor's office maintained an open file policy, thus giving defense counsel early access to both the list of State's witnesses and the autopsy report when it was completed more than ten months prior to trial. Although hospital and EMT reports were not contained within the State's file because they were not deemed important to the prosecution of the case, once these reports were requested by defense counsel, the State asked the hospital to provide the reports to appellants. As Valerie Carter has failed to demonstrate any harm from the denial of her motion for continuance, we find no error.

8. Appellants were convicted of felony murder, with the distribution of oxycodone count as the underlying felony, and possession of oxycodone with the intent to distribute. During sentencing, the trial court determined that the possession convictions were vacated by operation of law because they served as the underlying felony and appellants each were sentenced to life in prison with a concurrent 30-year sentence to serve for their respective distribution convictions. Valerie Carter contends the trial court erred by failing to merge her distribution conviction into the felony murder conviction and the State agrees.

If a defendant is convicted of felony murder as well as the underlying felony, the underlying felony merges into the felony murder conviction. *Green v. State*, 283 Ga. 126 (2) (657 SE2d 221) (2008). Here, the distribution conviction was the underlying felony that formed the basis for the felony murder conviction and it, not the separate possession conviction, was vacated by operation of law. *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). Accordingly, we vacate Valerie Carter's judgment of conviction and sentence for distribution of oxycodone and remand her case to the trial court for resentencing.

Although James Carter did not challenge his sentence on the distribution conviction on appeal, his conviction and sentence for distribution of oxycodone suffer from the same defect. His judgment of conviction and sentence on the distribution count are, therefore, vacated and the case is remanded to the trial court for resentencing.

*Judgments affirmed in part and vacated in part and cases remanded in part in Case Nos. S09A0233 and S09A0234. All the Justices concur.*

DECIDED APRIL 28, 2009 —
RECONSIDERATION DENIED MAY 18, 2009.

*Jeffrey L. Grube*, for appellant (case no. S09A0233).

*William M. Peterson*, for appellant (case no. S09A0234).
*Kelly R. Burke, District Attorney, Timothy M. Marlow, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.