### A10A2224. ESKEW v. THE STATE.
(709 SE2d 893)

PHIPPS, Presiding Judge.

On April 2, 2008, six-month-old D. O. was seriously injured while in the care of his mother's boyfriend, Michael Eskew. Eskew was indicted on two counts of aggravated battery, for allegedly: (i) having violently shaken D. O.; and (ii) having fractured the baby's skull. Eskew testified at the trial that D. O.'s injuries occurred when he accidentally dropped the baby. He was convicted of and sentenced on both counts of aggravated battery. On appeal, he contends that the trial court erred in denying his motion for continuance; refusing to give his requested jury charge on reckless conduct; denying his motion for mistrial; failing to merge his convictions; and rejecting his claim of ineffective assistance of counsel. We find no merit in these contentions, and affirm.

The evidence demonstrated that, on the afternoon of April 2, 2008, Eskew offered to care for D. O. at his house while the baby's mother ran an errand. Eskew's grandmother and cousin, who also lived at the house, were present, as was a friend who was performing yard work. At some point, while D. O. was lying on the floor of Eskew's bedroom with a bottle, Eskew asked his grandmother to monitor the baby while he used the restroom.

Very shortly thereafter, Eskew ran out of the house with D. O. in his arms, yelling that the baby was not breathing. Eskew and his cousin began performing CPR on D. O. while the yard worker spoke to a 911 operator. Emergency responders arrived, and when they asked what had happened, Eskew told them that he was giving D. O. a bottle when the baby cried out and fell from a futon to the floor, landing on some pillows and blankets.

D. O. was transported to a local hospital; at that point, he was in critical condition and showed signs of trauma. He was then flown to a second hospital, where he was admitted to the ICU. Doctors who treated him at that hospital and two pediatric ophthalmologists who examined D. O. shortly after he was injured testified to the nature and extent of his injuries, which were severe.

Eskew testified at trial that he initially lied about how D. O. had been injured. At the local hospital, Eskew first told a doctor that D. O. had fallen onto some pillows on the floor, and later stated that he thought D. O. had experienced an allergic reaction to baby formula. In an interview with the police, Eskew first stated that

D. O. had fallen a short distance onto some pillows and later had cried and become limp after choking on baby formula. He later said in a police interview that he had been sitting on a futon playing with D. O. by tossing him in the air and he failed to catch the baby, causing D. O. to hit the right side of his head forcefully on the metal futon arm. Eskew denied having violently shaken D. O.

Physicians who examined and treated D. O. testified that the baby's injuries were inconsistent with Eskew's accounts and consistent with the baby having been violently shaken. Eskew's expert witness, however, testified that D. O.'s injuries *were* consistent with Eskew's account of having dropped the baby, and were not probative of whether he had been violently shaken.

1. Eskew contends that the court erred in denying his motion for continuance, in which he claimed that he had insufficient time to review medical records in preparation for trial.

Pertinently, the record shows that Eskew was indicted on June 2, 2008 and retained counsel who entered an appearance on June 5. At an October 9, 2008 hearing, at Eskew's request, the trial court granted his counsel's motion to withdraw and appointed new counsel for him. Also at this hearing, both the state and Eskew stated their intent to present testimony from medical experts. The court acknowledged that Eskew's new counsel would need time to prepare and issued a scheduling order setting the case for trial on December 1, 2008.

Beginning on October 9, and continuing into November, the state produced various medical records to Eskew. On November 3, at Eskew's request, the trial court ordered the production of records from two medical institutions, including the second hospital to which D. O. had been taken after his injury. On November 14, Eskew moved to have his case removed from the December 1 trial calendar and continued pending the completion of discovery; he cited the failure of the second hospital to comply with the court's order to produce records and the need for sufficient time for his medical expert to review all records and assist in the defense.

On November 19, Eskew's counsel received more than 2,000 pages of medical records from the second hospital; he sent these records to his expert witness, who received them on November 21. On November 24, Eskew amended his motion for continuance, asserting that, with weekends and the Thanksgiving holidays there were only three "normal business days" before the scheduled December 1 trial date, which did not give him adequate time to have his expert review all of the medical evidence and assist him in his defense.

On December 1, the court heard argument on the motion for continuance. After recounting his efforts to prepare for trial,

Eskew's counsel stated that the defense was not prepared to go forward because counsel believed that he had not had adequate time to review the medical records. The court denied the motion for continuance, stating to counsel: "I think you've done a good job and acted in good faith, and I think you're sufficiently prepared and that the defense is not prejudiced."

"Motions for continuance seeking additional time to prepare for trial are addressed to the sound discretion of the trial court."[1] We will uphold a trial court's ruling on a motion for continuance absent a clear abuse of discretion.[2]

Here, the record shows that Eskew's counsel had received the medical records at issue by November 19, nearly two weeks before the scheduled trial date. The record does not indicate that the state played a role in delaying the production of the medical records received on November 19.[3] Eskew's expert witness testified that he had reviewed all of the medical records that he had been given, including those produced on November 19, in preparing for the trial. And while Eskew asserts that a continuance would have afforded his trial counsel more time to work with the expert witness to thoroughly prepare cross-examinations of the state's witnesses, Eskew has made no showing that his trial counsel's cross-examinations were somehow inadequate, nor has he pointed to any additional challenges or defenses that could have been presented on his behalf.[4] Under these circumstances, the trial court did not abuse its discretion in denying the motion for a continuance.[5]

2. Eskew argues that the court erred in refusing to give a jury

---

[1] *McIntyre v. State*, 302 Ga. App. 778, 781 (2) (691 SE2d 663) (2010) (citation omitted); see OCGA § 17-8-22.

[2] *Carter v. State*, 285 Ga. 394, 398 (7) (677 SE2d 71) (2009); *White v. State*, 304 Ga. App. 158, 159 (2) (695 SE2d 425) (2010).

[3] Compare *Livingston v. State*, 266 Ga. 501, 502-503 (1) (467 SE2d 886) (1996) (where prosecutor failed to comply with defendant's discovery request, and defendant thus did not obtain discovery to which he was entitled before trial, the trial court erred in denying defendant's motion for a continuance).

[4] See *McIntyre*, supra.

[5] See *Carter*, supra at 398-399 (7) (court did not abuse discretion in denying defendant's motion for continuance for, inter alia, more time to obtain and review medical reports; although state did not initially produce them because it did not deem them important to prosecution of the case, once requested, the state asked the hospital to provide them to the defendant; moreover, the defendant failed to demonstrate harm from the denial of her motion); *Columbus v. State*, 270 Ga. 658, 665 (4) (513 SE2d 498) (1999) (court did not abuse discretion in denying defendant's motion for continuance; although defendant's counsel did not receive state's timely-served discovery responses until a few days before trial, counsel had prepared exclusively for defendant's trial upon receiving the materials and had been able to interview the state's three main witnesses before trial); *Byrer v. State*, 260 Ga. 484, 485 (2) (397 SE2d 120) (1990) (court did not abuse discretion in denying defendant's motion for continuance where counsel had been appointed slightly more than one month before the trial date and cited only to the general press of business as the reason he was unprepared).

charge on the lesser included offense of reckless conduct. He did not submit a written request for a reckless conduct charge, but orally requested such charge at the close of the evidence.

In *State v. Stonaker*,[6] the Supreme Court of Georgia set forth rules governing jury charges on lesser included offenses, including the rule that a trial court's failure to charge on a lesser included offense, without a written request by the state or the accused, is not error.[7] The "very well settled"[8] rules set forth in *Stonaker* have been applied in instances where, as here, a party made an oral request for a charge on a lesser included offense.[9] Accordingly, Eskew cannot prevail on appeal on this ground.[10]

3. Eskew argues that the court erred in denying his motion for mistrial, which he made during the testimony of one of the state's expert witnesses. We review for abuse of discretion the court's denial of a motion for mistrial.[11] For the following reasons, we find no such abuse here.

(a) Eskew argues that the court erred in refusing to grant a mistrial after one of the state's expert witnesses testified regarding a medical examination he made of D. O. that was not reflected in the records the state produced before trial. The expert testified that, in addition to examining D. O. around the time of the injury, he also had examined the baby shortly before trial. Based on this later examination, at which D. O. had not demonstrated the ability to meet numerous developmental milestones for a child his age, the witness opined that D. O. had exhibited symptoms of a permanent brain injury.

Assuming, without deciding, that the court should have excluded the witness's testimony about the later examination based on the state's failure to produce records of the examination, the trial court nevertheless did not abuse its discretion in denying the motion for mistrial. Doctors who examined D. O. shortly after he had been injured testified to finding cell death in portions of D. O.'s brain, resulting in irreversible brain damage. The expert's testimony that the later examination also indicated a permanent brain injury was

---

[6] 236 Ga. 1 (222 SE2d 354) (1976).

[7] Id. at 2; see *Prater v. State*, 273 Ga. 477, 480 (3) (545 SE2d 864) (2001).

[8] *Brown v. State*, 285 Ga. 324, 327 (3) (676 SE2d 221) (2009).

[9] See *Daniel v. State*, 248 Ga. 271, 272 (1) (282 SE2d 314) (1981); *Johnson v. State*, 207 Ga. App. 34, 36-37 (2) (d) (427 SE2d 29) (1993). Compare *Kendrick v. State*, 287 Ga. 676, 678-679 (3) (699 SE2d 302) (2010) (allowing for appellate review of denial of request to charge on a specific defense – not a lesser included offense – although charge was not submitted in writing, where defendant identified the pattern jury charge he sought and read the language of that charge into the record).

[10] See *Daniel*, supra; *Stonaker*, supra.

[11] *James v. State*, 270 Ga. 675, 677 (4) (513 SE2d 207) (1999).

cumulative of the other medical evidence.[12]

(b) Eskew argues that the court erred in refusing to grant a mistrial after allowing the use of a demonstrative exhibit during the testimony of one of the state's expert witnesses. He contends that the demonstrative exhibit — "an animated video of a human skull" that was neither tendered nor admitted into evidence — was "better characterized as new evidence that should have been served on [him] in advance of trial." Although Eskew's counsel initially objected to the use of the demonstrative exhibit on the ground that the state had not produced it prior to trial, after counsel had the opportunity to review the demonstrative exhibit he did not make any further objection. Instead, he used the demonstrative exhibit to cross-examine the state's expert witness. Eskew's own expert witness, who was familiar with the demonstrative exhibit, testified about it on direct examination, as well. And Eskew did not assert the use of the demonstrative exhibit as a ground for his motion for mistrial. Consequently, Eskew's claim that the court erred in denying his motion for mistrial on this ground has been waived.[13]

4. Eskew argues that the court erred in failing to merge, for sentencing purposes, his convictions on the two counts of aggravated battery. In *State v. Marlowe*,[14] the Supreme Court of Georgia addressed the circumstances under which a defendant could receive multiple punishments for violations of the same criminal statute, noting that "this question requires a determination of the 'unit of prosecution,' or the precise act or conduct that is being criminalized under the statute."[15] "Without evidence of a legislative intent to allow multiple punishments for the same course of conduct, . . . acts that constitute a continuing criminal course of conduct are not punishable separately."[16]

Under OCGA § 16-5-24 (a), "[a] person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." The indictment in this case alleged that Eskew committed two separate acts against D. O. that caused him bodily harm: (1) the act of "violently shaking him," and (2) the act of "fracturing his skull." Evidence was presented to show that the act of fracturing the child's skull was separate from the act of violently shaking the baby — one of the

---

[12] See *Green v. State*, 194 Ga. App. 343, 346 (6) (390 SE2d 285) (1990).

[13] See *McDaniel v. State*, 289 Ga. App. 722, 725 (3) (658 SE2d 248) (2008).

[14] 277 Ga. 383 (589 SE2d 69) (2003).

[15] Id. at 384 (1) (footnote omitted).

[16] *McKee v. State*, 275 Ga. App. 646, 650 (5) (621 SE2d 611) (2005) (citations omitted).

state's expert witnesses testified that, based on D. O.'s injuries, there had been both a "very forceful shaking of the child" *and* "some type of impact as well to account for the fracture to the skull." The trial court did not err in sentencing Eskew on both aggravated battery counts.[17]

5. Eskew argues that he received ineffective assistance of counsel. To prevail on this claim, Eskew

> must establish, pursuant to *Strickland v. Washington*,[18] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. . . . In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[19]

We need not address both components of the *Strickland* test if the showing on one is insufficient, nor must we address the components in any particular order.[20]

(a) Eskew asserts that his counsel admitted to being unprepared for trial because of the thousands of pages of medical records he received shortly beforehand. Counsel testified at the hearing on Eskew's motion for new trial that he felt that he had not "had enough time to prepare because of the voluminous records." He testified at that hearing, however, that he did the following to prepare for trial regarding the medical evidence: he obtained an expert witness, he requested records from various doctors and hospitals, he sought a court order for the production of records from the second hospital, he provided the expert witness with the records for his review, he discussed the case with the expert witness, and he reviewed with the expert witness those records that the expert believed were important to the case. Eskew has not shown that the receipt of the medical records shortly before trial was the fault of his counsel, and to the extent his counsel's preparation was affected thereby, that preparation did not constitute deficient performance on his counsel's part.[21]

(b) Eskew asserts that his counsel failed to perfect the record for

---

[17] Compare *Gonzales v. State*, 298 Ga. App. 821, 823-824 (1) (681 SE2d 248) (2009) (convictions on two counts of aggravated battery merge for sentencing where both convictions were based on the defendant's single act of pushing the victim out of a moving car).

[18] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[19] *Espinosa v. State*, 285 Ga. App. 69, 72 (2) (645 SE2d 529) (2007) (footnotes omitted).

[20] *Turner v. State*, 253 Ga. App. 760, 763 (6) (560 SE2d 539) (2002).

[21] See *Childs v. State*, 287 Ga. 488, 494 (7) (696 SE2d 670) (2010) (defense counsel's alleged lack of preparation, occasioned by state's failure to disclose a witness which was not

appeal, citing five instances: (1) "during a bench conference about the centerpiece of [the state's] prosecution theory: shaken baby syndrome"; (2) "regarding an issue in the indictment"; (3) "concerning what was said during a bench conference about a recording of the 9-1-1 call just before it was published, without objection, to the jury"; (4) "with respect to [counsel's] exceptions to the jury charge"; and (5) "with respect to whether [counsel] attempted to poll the jury after its verdict." But at the hearing on his motion for new trial, Eskew made no showing that anything improper had occurred during these portions of the trial, nor did he present any evidence that the manner in which his trial counsel addressed these cited instances constituted deficient performance. Consequently, Eskew has failed to demonstrate deficient performance.[22]

(c) A redacted video recording of Eskew's police interview was played to the jury. This recording, which was over two hours in length, contained a brief reference to Eskew having taken a prescription medication. Trial counsel neither reviewed the redacted version of the recording before it was played at trial nor objected to it, as the court had instructed counsel to do, when the reference to the medication occurred within the recording. Eskew argues that this constituted ineffective assistance of counsel.

Assuming, without deciding, that trial counsel's performance was deficient in this regard, Eskew has not satisfied *Strickland*'s prejudice prong. Although he argues in his appellate brief that the reference concerned "illegal use of prescription drugs" and was prejudicial character evidence, no mention was made in the interview of whether he had been prescribed the drug or was consuming it illegally.[23] Under these circumstances, Eskew has not shown "a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[24]

---

counsel's fault, did not constitute deficient performance). Compare *Johnson v. State*, 284 Ga. App. 147, 150-152 (2) (643 SE2d 556) (2007) (finding defendant received ineffective assistance of counsel due to counsel's lack of preparation for trial and failure to prepare a defense, where counsel testified that he prepared only minimally for trial because he expected a motion for continuance to be granted).

[22] See *Sharp v. State*, 278 Ga. 352, 354 (3) (602 SE2d 591) (2004); *Frazier v. State*, 263 Ga. App. 12, 16 (3) (d) (587 SE2d 173) (2003).

[23] See generally *Brock v. State*, 179 Ga. App. 519, 520 (1) (347 SE2d 230) (1986) (evidence that defendant had received large quantities of prescription drugs "did not necessarily place [defendant's] character in issue," where there was no evidence that defendant had obtained the drugs illegally).

[24] *Schofield v. Holsey*, 281 Ga. 809, 811-812 (II) (642 SE2d 56) (2007) (citation, punctuation and footnote omitted). See *Flemming v. State*, 301 Ga. App. 711, 713-714 (2) (688 SE2d 653) (2009) (defendant failed to show prejudice regarding counsel's alleged professional error – failing to redact from an audiotape an informant's remark regarding a "big time drug

(d) Eskew asserts that his counsel also provided ineffective assistance during the sentencing phase of his trial by "fail[ing] to provide some mitigation or say anything at sentencing." Eskew himself addressed the court at the sentencing hearing and asked for mercy.

At the hearing on his motion for new trial, Eskew's post-conviction counsel asked trial counsel whether he could have "suggested to the Court or offered to the Court . . . that . . . Eskew had no prior violent offenses on his record or that he was a father and had children and family members in court," to which trial counsel responded, "I agree with you that [there are] probably things I could have said . . . in mitigation." No other evidence was adduced regarding what trial counsel might have presented or argued, or how any such omitted evidence or argument might have affected the court's sentencing decision. Consequently, Eskew has not shown prejudice from the alleged professional error by his counsel during sentencing.[25]

*Judgment affirmed. Miller, P. J., and McFadden, J., concur.*

DECIDED MARCH 30, 2011.

*Herbert Adams, Jr.*, for appellant.
*Peter J. Skandalakis, District Attorney*, for appellee.

---

dealer" or to seek a curative instruction thereon – where it was unclear to whom remark referred and where the state had presented strong evidence of defendant's guilt of the charged offense); *Adams v. State*, 276 Ga. App. 319, 324 (6) (a) (623 SE2d 525) (2005) (in view of overwhelming evidence supporting jury verdict, defendant failed to show prejudice from counsel's alleged error in neither objecting to nor moving for a mistrial based on witness's passing reference to defendant's prior arrest).

[25] See *Shuler v. State*, 306 Ga. App. 820, 823-824 (3) (703 SE2d 382) (2010).