**THIRD DIVISION
ANDREWS, P. J.,
DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**October 9, 2013**

# In the Court of Appeals of Georgia

A13A1449. OWENS v. THE STATE.

McMILLIAN, Judge.

Roy Owens appeals the denial of his motion for new trial following his conviction by a jury on one count of armed robbery and one count of possession of a firearm during the commission of a felony. On appeal, he asserts that the trial court erred in denying his motion for new trial because he received ineffective assistance of counsel at trial and during his presentence hearing. Owens also asks that his case be remanded for re-sentencing because he asserts that the trial court erred in failing to consider mitigating and aggravating circumstances in pronouncing sentence.

Viewed in the light most favorable to the verdict,[1] the evidence at trial showed that shortly after opening up the Family Dollar store in Tifton at around 8 a.m. on

---

[1]See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

May 26, 2011, store manager Jacob Bias was approached by a masked man. Bias said that the man was wearing a white sweatshirt,[2] dark pants, and a black mask that covered most of his face. The man grabbed the back of Bias's shirt, put a gun to his head, and told Bias to take him to the store's safe. As Bias reached into his pocket to grab his keys, the man said, "Don't try anything stupid. The gun is loaded." When Bias bent down to open the safe, the man put the gun to the back of his head. And when Bias handed over the money, the man reached around and pepper sprayed him. At around 8:05 to 8:10 that morning, Janey Finehart was parking in front of the Family Dollar store when she saw a man run out of the store, pick up a bicycle and begin riding away. She said that the man was wearing a gray hoodie and had something black over his face.

Natasha Godfrey of the Moultrie Police Department responded to the robbery report and interviewed Bias and Finehart. She notified other responding officers that the suspect was wearing "a white hoodie, possibly white or gray in color," and that he had on a mask. She also indicated the direction in which the suspect was heading.

[2] On cross-examination, Bias acknowledged that he could have told the police immediately after the incident that the man's shirt was gray and that it could have been gray. But at the time of trial, he believed that the shirt was white, although he was not 100 percent sure.

As Deputy Terry Gibson of the Colquitt County Sheriff's Department headed toward the crime scene in response to the report, he saw a man walking away from a dumpster behind an apartment building near the robbery scene. The man placed his hand partially over his face and ran into the backdoor of an apartment. Officers secured both the front and back door of the building, while Gibson and another officer searched the area surrounding the dumpster. Between the back wall of the dumpster and the building, they located a "grayish" hoodie and a small container of pepper spray. Later, when the same man seen entering the apartment came out again, he was placed into custody. That man was subsequently identified as Owens.

Sean Bostick, an investigator with the Colquitt County Sheriff's Department, also responded to the robbery report and began circling the area looking for the suspect. The report indicated that a bicycle was involved, and during Bostick's search, he saw a bicycle laying on a curb, partially in the roadway, near an alley that cuts through the same apartment complex. The bicycle was located in an area near the apartment where Owens was apprehended. Other officers found a black "do-rag" scarf near the area where Bostick located the bicycle.

Anterianna Walker, Owens' cousin, testified that sometime after 8 a.m. on the morning of the robbery, she was inside an apartment at the same complex with her

mother when she heard Owens banging on the door. When Anterianna let him inside, she noticed that he was sweating so much that his shirt was wet. She also saw that he had a zippered bank bag in his pocket and a gun. Owens placed both of these items down into furniture in the apartment. He then went upstairs to use the phone and repeatedly looked out the windows where Anterianna could see the police. Owens was wearing pants at the time, but changed into a pair of Anterianna's gym shorts. LaToya Walker, Anterianna's mother, testified she was awakened that morning when Owens asked to use her phone. When she learned that police were outside the apartment, she asked Owens what he had done. Although he denied he had done anything, he told LaToya at one point that he had done "nothing that they can prove." LaToya later granted police permission to search her apartment.

Dave Underwood, an investigator with the Moultrie Police Department, and David Corona, an investigator with the Colquitt County Sheriff's Department, participated in the search of the Walkers' apartment. During that search, police located a pair of pants and a gun stuffed in a chair. They also located a money bag and $549 in cash stuffed inside a loveseat. LaToya Walker stated that she did not own a firearm, nor did she keep a green zippered bank bag stuffed in her furniture.

4

Underwood identified State's Exhibit 4 as the money bag police located in the Walkers' apartment and State's Exhibit 26 as the gun they recovered there.

Bias also identified State's Exhibit 4 as the bag from the Family Dollar safe that he gave to the masked man , and Owens' brother, Matthew Stringer, identified State's Exhibit Number 26 as a gun he owned. Stringer testified that on the morning of the robbery, he was awakened by a call from Owens asking him to come to LaToya Walker's house right away. Before Stringer left his house that morning, he noticed his gun was missing, although he had seen it there the night before.

Thereafter, Owens was charged with and convicted of one count of armed robbery and one count of possession of a firearm during commission of a felony. After denial of his motion for new trial, this appeal followed.

1. Owens asserts that he received ineffective assistance of counsel at trial because his attorney (a) failed to move for a mistrial after learning that the jurors had not been provided with any means of taking notes; (b) failed to move for a directed verdict at the close of the State's case; and (c) allowed an agent of the State to attempt to convince him to accept the State's plea offer.

"A claim of ineffective assistance of counsel is a mixed question of law and fact. The proper standard of review requires that we accept the trial court's factual

findings unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *State v. Crapp*, 317 Ga. App. 744, 745 (2) (732 SE2d 806) (2012). And in considering Owens' arguments, we apply

> [t]he two-prong test for determining the validity of a claim of ineffective assistance of counsel provided in *Strickland v. Washington,* 466 U.S. 668 (104 SCt 2052, 80 LEd2d 674) (1984), [which] asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Punctuation and footnote omitted.) *Bruce v. State*, 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001). "There is a strong presumption that counsel's conduct falls within the range of sound trial strategy and reasonable professional judgment. [*Strickland*, 466 U. S. at 689]." *Newkirk v. State*, 290 Ga. 581, 582 (2) (722 SE2d 760) (2012).

> [A]nd the defendant bears the burden of overcoming this presumption. To carry that burden, the defendant must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not, or put another way, that his lawyer made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.

6

(Citations and punctuation omitted.) *State v. Worsley*, 293 Ga. 315, 323 (3) (745 SE2d 617) (2013). See also *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012) ("The likelihood of a different result must be substantial, not just conceivable.") (citation omitted).

(a) Owens contends that his trial counsel was deficient in failing to move for a mistrial after the trial judge stated, as the State's fifth witness was taking the stand, that he had intended at the start of trial to offer the jury pads and pencils for note-taking. The judge indicated that "if the jury thinks it would be helpful, we can do that right now." Owens argues that notepads would have been helpful to the jury in light of conflicts in the evidence already presented. He asserts that his trial counsel should have moved for a mistrial at this point or at least demanded that the jury be furnished with materials for taking notes. But the transcript indicates that when the trial judge offered the jurors pads and pencils, they declined the offer. Owens offered no evidence on this issue at the hearing on the motion for new trial beyond his trial counsel's testimony that he never considered moving for a mistrial or demanding that note-taking materials be provided to the jury. .

We know of no provision entitling a defendant to demand that jurors be furnished with the means for taking notes in every case, nor has Owens pointed us to

7

any such law. To the contrary, absent special or unusual circumstances, the decision whether to allow the jury to take notes lies in the sound discretion of the trial court. See *Potts v. State*, 259 Ga. 96, 104 (21) (376 SE2d 851) (1989) (trial court did not abuse discretion in allowing jurors to take notes); *Miller v. State*, 307 Ga. App. 598, 598-599 (705 SE2d 697) (2011) (within trial court's discretion to allow jurors to take notes); *Williamson v. State*, 142 Ga. App. 177, 178 (3) (235 SE2d 643) (1977) (trial court did not abuse discretion in instructing juror not to take notes because the case was not complicated); *White v. State*, 137 Ga. App. 9, 10 (1) (223 SE2d 24) (1975) (in absence of special or unusual circumstances, note-taking left to judge's discretion). We find no special or unusual circumstances in this case sufficient to remove the issue of note-taking from the trial court's discretion. Therefore, Owens has failed to establish that his trial counsel was deficient in failing to move for a mistrial or to demand that writing materials be furnished to the jury.

In any event, the transcript indicates that when the trial court offered paper and pencils for note-taking, the jurors declined the offer.[3] Under these circumstances,

---

[3] We note that the jury had no obligation to take notes. As the State points out, Georgia's Pattern Jury Instructions provide the following instruction on the issue of note-taking:

You may take notes, but you are not required to do so. If you decide to

8

Owens cannot establish that he was prejudiced by the trial court's failure to offer the materials earlier or by his counsel's failure to take further action in this regard. Accordingly, we find no merit to Owens' claim for ineffective assistance of counsel on this ground.

(b) Owens argues that his trial counsel was deficient in failing to move for a directed verdict at the close of the State's case. Owens's counsel did not recall the specifics of Owens's case but testified that if he did not move for a directed verdict, it was because he felt that the evidence was sufficient to go to the jury.

We find that the evidence at trial, although circumstantial, was consistent with the charges in this case; was sufficient to exclude every reasonable hypothesis save

---

take notes, please remember that note taking should not divert you from paying full attention to the evidence and evaluating witness credibility. Your observations of the witnesses during their testimony can be vital to your determination of the believability of their testimony. . . . Notes are not evidence, only memory aids, and should not take precedence over your recollection. *It is the duty of each juror to recall the evidence, and while you may consider another juror's notes to refresh your memory, you should rely on your own recollection of the proceedings.*

(Emphasis supplied.) Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 0.01.00 (4th Ed. 2007).

that of Owens's guilt; and was sufficient to allow the jury to find Owens guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). And because the evidence was sufficient to support Owens convictions, "counsel's failure to move for a directed verdict presents an insufficient ground as a matter of law for claiming ineffective assistance of counsel." (Citation omitted.) *Nelson v. State*, 285 Ga. 838, 839 (2) (684 SE2d 613) (2009).

(c) Owens also asserts that his trial counsel was ineffective for allowing Commander Alfonzo Cook of the Moultrie Police Department to speak with Owens about accepting the State's plea offer.

The terms of the State's offer were put on the record prior to trial. The State offered Owens the opportunity to plead to robbery by force in exchange for a joint recommendation of a twenty-year sentence, with eight to serve. Alternatively, he could "plead to [the] same charge in front of a judge as a [pre-sentence investigation] sentence." Owens's counsel said that he informed Owens of the State's offer, the benefits of the offer, the mandatory minimum sentences for armed robbery and the possibility of parole in a case of armed robbery.[4] But Owens wanted to go to trial.

---

[4] Although the transcript reflects that the trial judge made this representation, this reference appears to be a typographical error, as the speaker begins his recitation by addressing the judge.

10

Owens's attorney testified at the new trial hearing that he advised Owens to accept the State's plea deal because it was a good offer and the State had a very strong case against him.[5] Nevertheless, Owens chose to reject the offer. After jury selection, Commander Cook asked counsel if he had a problem with Stringer, Owens's brother, talking to Owens with the hope that Owens might decide to accept the plea offer. Owens' counsel accepted Cook's offer because by that time, Owens was not participating in his defense other than to give him "very short, sarcastic-type answers when [he] tried to discuss [the case] with him." He felt that Stringer might be able to help, and he viewed the meeting as a family member's attempt to tell Owens that he was making a mistake in going to trial. And, in fact, Stringer testified that he agreed to meet with Owens and Cook after Cook asked him to "[t]alk some sense [into Owens] before he [screwed himself] on the trial." Owens's counsel, however, did not ask Cook about the specifics of what they intended to say at the meeting.

Owens's counsel said that he did not participate in the meeting because he thought the brother would be doing most of the talking and that it would be best to

---

[5] Counsel testified that he thought Owens had less than a five percent chance of being acquitted.

let them talk without him. Owens's counsel was not concerned that Cook could misrepresent the plea because he had gone over the terms of the offer thoroughly with Owens.

Although Owen's counsel's decision to allow him to speak with his brother and a police officer outside of his presence is somewhat unorthodox, he believed Stringer would do most of the talking, and counsel hoped that he might be able to persuade Owens to accept the plea outside of counsel's presence. It is apparent that Owens's counsel believed that accepting the State's plea offer would have been in Owens's best interest and that his approval of Owens's conversation with Cook and Stringer was a last-ditch attempt to obtain the recommended result. Accordingly, under the peculiar circumstances of this case, we find that Owens has failed to overcome the strong presumption that his attorney's performance falls within "the broad range of reasonable professional conduct or [to] affirmatively [show that his counsel's approval of the conversation] was not a conscious, deliberate trial strategy." (Citation omitted.) *Hall v. State*, 292 Ga. 701, 703 (4) (a) (743 SE2d 6) (2013).

Moreover, Owens presented no evidence of the content of that conversation other than Stringer's testimony that Cook did not convey the exact terms of the plea offer in Stringer's presence. Thus, Owens failed to demonstrate that Cook

misrepresented the plea, improperly interrogated Owens outside the presence of his counsel, or engaged in any other improper conduct during the conference. As a result, Owens failed to show any prejudice resulting from his counsel's decision to allow him to meet with Cook and Stringer.

2. Owens also asserts that he received ineffective assistance of counsel at the presentence hearing because his counsel did not object to the State's use of his criminal record in Florida, even though the State failed to provide notice of its intent to use his earlier conviction in aggravation of punishment. Owens also contends that his counsel failed to adequately prepare for the presentence hearing.

The trial court conducted the presentence hearing immediately after the jury announced its verdict. Owens's trial counsel asked the trial court "for as much leniency as the Court could give," noting that Owens had no prior criminal history in Georgia. Owens declined to make a statement. The prosecutor then stated, without objection, that Owens had a criminal record in Florida from 2007, when he was charged with armed robbery but later pled to a grand theft felony. The prosecutor did not, however, introduce a certified copy of the Florida conviction into evidence. The prosecutor asked the trial court to impose the maximum sentence, given Owens's

history "of having a firearm with him during crimes" and the serious nature of the crime in this case.

The trial court sentenced Owens to twenty years, eighteen to serve, on the armed robbery charge and five years on the firearm possession charge, to be served consecutively, although the trial court ordered that the latter sentence could be served on probation. This sentence fell within the legal parameters for an armed robbery conviction under OCGA § 16-8-41 (b), which provides for punishment "by death or imprisonment for life or by imprisonment for not less than ten nor more than 20 years," and for a conviction of possession of firearm during the commission of a felony under OCGA § 16-11-106 (b), which provides for punishment "by confinement for a period of five years, such sentence to run consecutively to any other sentence which the person has received."

At the hearing on the motion for new trial, Owens's trial counsel testified that he did not ask for a continuance for the presentence hearing because he did not see any benefit in doing so. By that point, Owens was refusing "[to] participate on any meaningful level" with his counsel, and no family members had offered to assist in Owens's defense. Owens's counsel acknowledged that he made little more than a "pro forma request for leniency," but he said that this was "theoretically" a strategic choice

14

because he did not know what else he could have done. He said that "sometimes [it had] been [his] experience that in situations like that, saying less is more."

Owens's trial counsel conceded, however, that he did no investigation to identify potentially mitigating evidence and never questioned Owens's family about whether they had any evidence to present in mitigation at presentencing. In fact, he never talked to any of Owens's family members. In his initial interview with Owens, however, he asked about his education and his mental health history. And although he did not recall asking Owens specifically about witnesses for presentencing, he said it was his practice to ask his clients whether they had any witnesses they wanted to call, and he did not remember Owens mentioning anyone.

With respect to mitigation evidence that could have been presented, Stringer testified at the motion for new trial hearing that their mother died when Owens was seven, which resulted in the family being split apart. Owens, who had been living with his mother, grandmother and siblings, was sent to live with his father, who in Stringer's opinion never taught him right from wrong or "how to be a man." He also testified that Owens was sent to a special school to help him "catch up" so that he could graduate with his class.

15

Because Owens's counsel never spoke with Stringer, he was unaware Owens had lost his mother when he was young, had attended a special school, or any of the other information about which Stringer testified. But even had Owens's counsel known this information, he said he would not have considered this information significant or necessary for presentation to the court in mitigation.

However, Owens's counsel was aware prior to trial of Owens's Florida robbery offense, probably from his discussions with Owens. He also discussed the Florida crime with the prosecutor, and he expected the State to cite this conviction during sentencing. Nevertheless, he never saw a printout of Owens's Florida record prior to trial and only reviewed if for the first time on the day of the motion for new trial hearing; therefore, he had no way to determine whether the prosecutor's representations about this crime were accurate. Owens's counsel stated, however, that the prosecution's characterization of the prior conviction was consistent with his knowledge of the crime.

Pretermitting whether this evidence demonstrates that Owens's trial counsel's performance at presentencing was deficient, we find that Owens failed to show the requisite prejudice. This Court is not required to analyze both prongs of the *Strickland* test if the defendant has made an insufficient showing on either prong;

16

thus, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U. S. at 697 (IV). Nevertheless, "[t]o the extent that the performance of counsel was deficient in more than one respect, it is the collective effect of the deficiencies against which prejudice is measured. [Cit.]" *State v. Worsley*, 293 Ga. at 324 (3). See also *Schofield v. Holsey*, 281 Ga. 809, 812, n. 1 (642 SE2d 56) (2007). We find that Owens failed to carry his burden on the prejudice prong even considering the collective effect of his claimed instances of ineffective representation at sentencing.

Although Owens's counsel failed to object to the prosecutor's mention of the Florida conviction, Owens provided no evidence to demonstrate that the prosecutor misrepresented the terms of that conviction. In any event, the trial judge stated at the motion for new trial hearing that he did not consider Owens's Florida record in pronouncing sentence because he had no certified copy of the prior conviction. He said that he only considered the specific facts of this case (i.e., "what happened, what was testified to, how the evidence was presented") in sentencing Owens.

And although his trial counsel failed to actively search for mitigation evidence, Owens failed to provide such information to his counsel. See *Tyner v. State*, 313 Ga.

17

App. 557, 566-567 (6) (722 SE2d 177) (2012) (counsel not ineffective in failing to present evidence regarding defendant's mental health condition where counsel was unaware of this condition). The only potential evidence Owens presented at the motion hearing came from Stringer. Owens's counsel did not consider this information to be significant enough to present in mitigation, and Owens failed to show how this evidence might have affected his sentencing. See *Eskew v. State*, 309 Ga. App. 44, 51 (5) (d) (709 SE2d 893) (2011) (defendant failed to establish prejudice from counsel's decision not to present mitigating evidence at presentencing where no evidence adduced as to potential effect of omitted evidence on sentence).

Accordingly, even considering the collective effect of his counsel's alleged deficiencies, we find that Owens has failed to establish a reasonable probability that the outcome of the proceedings would have been different but for his counsel's performance.

3. Owens further asserts that the trial judge erred in sentencing because he admittedly did not consider any evidence outside the facts of this case. Owens asserts that the trial court had a duty to consider mitigating and aggravating evidence in addition to the evidence adduced at trial.

18

Under OCGA § 17-10-2 (a) (1), a trial judge is required to "hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or nolo contendere of the accused, or the absence of any prior conviction and pleas." "The judge shall also hear argument by the accused or the accused's counsel and the prosecuting attorney, as provided by law, regarding the punishment to be imposed." OCGA § 17-10-2 (a) (2).

Here, the trial court provided the parties an opportunity to present evidence and argument on the issue of sentencing as required by the statute. And as Owens has argued and his counsel admitted, the defense presented no mitigating evidence for the trial court's consideration, choosing to rely, instead, on a plea for leniency. The State, in turn, presented no aggravating evidence – the prosecution failed to introduce a certified copy of Owens's prior criminal conviction – but nevertheless argued for the maximum sentence based on his prior conviction. The trial judge stated on the record, however, that he did not consider the prior conviction. Indeed, it would have been improper for the trial court to do so. See *Brinkley v. State*, 301 Ga. App. 827, 831 (2) (689 SE2d 116) (2009) ("a trial court cannot rely upon the hearsay statement of a prosecutor to establish a fact for purposes of sentencing.") (citation omitted).

Therefore, without any evidence in mitigation or aggravation, the evidence adduced at trial presented the only proper subject for the trial court's consideration, and we accordingly find no error.

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*