**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 20, 2020**

# In the Court of Appeals of Georgia

A19A2349. TERRELL v. THE STATE.

PHIPPS, Senior Appellate Judge.

On appeal from her conviction for three counts of furnishing prohibited items to inmates (OCGA § 42-5-18), Maria Terrell argues that the evidence was insufficient and that the trial court erred in failing to merge her sentences for each count as a matter of law.[1] We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citations omitted.) *Collinsworth v. State*, 276 Ga. App. 58, 59 (622 SE2d 419) (2005).

---

[1] Terrell was found not guilty of trafficking methamphetamine.

The record shows that around 11 p. m. on February 23, 2014, a portal sergeant at Telfair State Prison was patrolling the prison perimeter. The area is often used by persons attempting to throw contraband over the prison fence and is lit by floodlights. The portal sergeant saw a woman near the prison fence. He called his supervisor, who contacted the sheriff's department to report that someone was trying to throw items over the fence. At trial, he testified that he saw the woman lyng down near the fence, attempting to conceal two white "net bags," and that when he approached, she jumped up and ran, carrying the bags. At trial, he identified Terrell as the person he had seen. Terrell later admitted to law enforcement that she had agreed to take the packages to the prison and planned to throw them over the fence, but could not because they were too heavy.

While pursuing Terrell, the portal sergeant saw a white Nissan parked on a nearby road. When he turned on the lights of the golf cart he was driving, the Nissan sped away. A sheriff's vehicle was approaching, blue lights flashing, and pulled the Nissan to the side of the road. When the portal sergeant looked inside, he saw a woman but realized that she was not the same person he had seen outside the prison

fence.[2] He continued his search, found Terrell coming out of a ditch, and apprehended her. When he asked about the bundles she had been carrying, she said she had dropped them in a field.

When the portal sergeant returned to the area where he had seen Terrell running, he found the net bags, which were torn, as well as other bundles scattered around. An inventory showed that the bags or bundles contained items including a Gerber knife, cell phones and chargers, hacksaw blades, glue, J-B Weld, dental floss, a tool kit, sewing needles, lighters, SD cards, earbuds, and tobacco. T-shirts, bandannas, and other clothing items also were found.

The State additionally presented evidence that methamphetamine was found in a plastic container in the packages retrieved from the field where the portal sergeant spotted Terrell. There also was evidence that officers found syringes and a yellow or orange plastic container filled with methamphetamine in the Nissan, which Terrell told law enforcement was "her ride." Officers additionally found in the Nissan a Wal-Mart receipt for some of the items inventoried by law enforcement, and for other items not found at the prison.

---

[2] This woman, Vila Nounay, was later charged in the same indictment as Terrell.

3

Law enforcement also searched a motel room in Dodge County where Terrell said she was staying. They found items including cell phone chargers, drill bits, chisels, magnetic tape, ear buds, lighters, plastic tubing, flux pipe, and torches. A meth pipe was in the sink. Officers also found a laptop computer open to a layout of Telfair State Prison.

1. Terrell contends that the evidence was insufficient to sustain her convictions. We disagree.

Terrell was charged and convicted of three separate counts of violating the version of OCGA § 42-5-18 in effect at the time of the crimes,[3] which provides, in pertinent part, that:

> (b) It shall be unlawful for any person to obtain for, to procure for, or to give to an inmate a gun, pistol, or any other weapon; any intoxicating liquor; amphetamines, biphetamines, or any other hallucinogenic drugs or other drugs, regardless of the amount; any telecommunications device; or any other article or item without the authorization of the warden or superintendent or his or her designee.

---

[3] See OCGA § 42-5-18; Laws 2008, Act 551, § 1, effective July 1, 2008 to May 2, 2016.

(a) Terrell was convicted under a count in the indictment which accused her of "furnishing prohibited items to inmates . . . methamphetamine." On appeal, she argues that there was no evidence to sustain this conviction. Rather, she contends that the evidence shows the methamphetamine was found in a purse, belonging to her co-defendant, which was found in the Nissan. We disagree.

While there was indeed evidence presented that methamphetamine was found in the Nissan, in a container inside a purse belonging to Terrell's co-defendant, the State also presented evidence that methamphetamine was found in the bundles retrieved from the field where the portal sergeant spotted Terrell. When she was apprehended, Terrell told law enforcement she was looking for her "ride" and indicated that the Nissan was that "ride." There was evidence that Terrell had rented the Nissan. Terrell's co-defendant, who was in the Nissan, told law enforcement that she "was there for visitation for the prison." Visiting hours at the prison were from 9 a.m. to 3 p.m. Terrell was spotted trying to throw items over the fence at around 11 p.m.

As noted above, the portal sergeant reported that Terrell was attempting to throw the bundles over the prison fence. Terrell's own admission that she agreed to take the bundles to the prison and planned to throw them over the fence, the evidence

5

that the bundles contained methamphetamine, and the testimony that she and her co-defendant were at the prison to visit inmates, after hours, was sufficient to show that Terrell had obtained or procured the methamphetamine for inmates. *Collinsworth*, 276 Ga. App. at 59.

(b) Terrell argues that the State failed to prove that *any* of the items were procured or obtained without the warden's permission. We disagree.

Former OCGA § 42-5-18 (b), applicable here, provides, in pertinent part, that it is unlawful for any person to obtain for inmates "a gun, pistol, or any other weapon; . . . amphetamines, biphetamines, or any other hallucinogenic drugs or other drugs, regardless of the amount; any telecommunications device; or any other article or item without the authorization of the warden[.]" Pretermitting the question whether a warden's authorization is required for only some rather than all of the categories described in the statute, there was circumstantial evidence excluding every other reasonable hypothesis save Terrell's guilt.

Terrell admitted that she agreed to bring items to the prison and planned to throw them over the fence. The portal sergeant testified that he saw her outside the prison fence at 11 p.m., long after visiting hours had ended, lying in the grass attempting to conceal the bundles; and that she ran when he approached. See *Young*

*v. State*, 305 Ga. 92, 94 (1) (823 SE2d 774) (2019) ("evidence of flight may be considered as an act reflecting consciousness of guilt") (citation and punctuation omitted). The only reasonable hypothesis under these circumstances is that Terrell would not have been hiding by the prison, planning to throw the items at issue over the prison fence late at night, if the warden had authorized any of her actions. See *Tauch v. State*, 305 Ga. App. 643, 645-646 (1) (700 SE2d 645) (2010) (affirming convictions related to removal of bank ATM without authorization, where circumstantial evidence included defendant's vehicle spotted at bank prior to crime and shortly after alarm was activated; vehicle had 25-foot tow strap with large metal hook, tires that matched tracks found at the scene, and scrape marks consistent with dragging a heavy object).[4] We find no error.

---

[4] Contrary to Terrell's contentions, *Mincey v. State*, 303 Ga. App. 257 (692 SE2d 809) (2010) is distinguishable. *Mincey* does not stand for the proposition that the warden's lack of authorization must be proven as an element of all of the behavior criminalized by OCGA § 42-5-18 (b). *Mincey* involved a challenge to the sufficiency of the evidence showing a defendant's intent to possess a cell phone under OCGA § 42-5-18 (c). Id. at 257. *Mincey* notes that the warden testified that she had never given an inmate permission to possess a cell phone. Id. This is dicta, because the issue before the Court was Mincey's intent, and his claim that he had no knowledge of any ban on cell phones. Id. *Mincey* contains no discussion or finding that the State needed to prove the warden's lack of authorization as an element of the crime of possessing a telecommunications device. Id. at 257-258.

(c) Terrell argues that the State failed to prove venue because it presented no evidence that, pursuant to the language of OCGA § 42-5-18 (b), she "obtained" or "procured" the items at issue in Telfair County. Rather, she contends that while the State presented a Wal-Mart receipt showing the purchase of some of the items, it did not prove who purchased the items or the county in which the Wal-Mart was located. We find no error.

The indictment, in all three counts at issue here, charged in pertinent part that Terrell "did unlawfully *obtain and procure* for inmates at Telfair State Prison" the various items at issue "*by bringing* the said [item or items] to Telfair State Prison property." (Emphasis supplied.) In her appellate brief, Terrell makes various arguments regarding the definitions of "obtain" and "procure." According to the Oxford English Dictionary (OED Third Edition, March 2004),[5] "obtain" means, in pertinent part, "[t]o come into the possession of; to procure[,]" and "procure" means "[t]o obtain; to bring about."

It is clear from the evidence, as outlined above, that Terrell had "come into the possession of," and thus obtained or procured, the items as charged in the indictment. The portal sergeant testified that he saw her on prison property, holding the bundles,

---

[5] See https://oed.com.

and that he reported her attempt to throw them over the prison fence. The bundles were shown to contain the items as charged in the indictment. The portal sergeant testified that the actions underlying the charged crimes took place in Telfair County. The indictment did not charge Terrell with obtaining or procuring the items by purchasing them at Wal-Mart or by packaging them in a motel room in Dodge County, contrary to Terrell's argument. It is well-settled that the State must prove venue beyond a reasonable doubt. Whether the State met its burden to do so is for the jury, as is the resolution of any ambiguities in the evidence. See *Garza v. State*, 347 Ga. App. 335, 337 (1) (b) (819 SE2d 497) (2018). We find no error.

2. Terrell argues that the trial court erred in failing to merge, for sentencing purposes, her convictions on all three counts of furnishing items to inmates. We disagree.

In *State v. Marlowe*, 277 Ga. 383 (589 SE2d 69) (2003), the Supreme Court of Georgia outlined the circumstances under which a defendant could receive multiple punishments for violations of the same criminal statute. "[T]his question requires a determination of the 'unit of prosecution,' or the precise act or conduct that is being criminalized under the statute." (Footnote omitted.) Id. at 384 (1). "Without evidence of a legislative intent to allow multiple punishments for the same course of conduct,

9

. . . acts that constitute a continuing criminal course of conduct are not punishable separately." (Citations omitted) *McKee v. State*, 275 Ga. App. 646, 650 (5) (621 SE2d 611) (2005). When construing this statute on appeal, our review is de novo. *Coates v. State*, 304 Ga. 329, 330 (818 SE2d 622) (2018).

Here, with respect to the three counts of furnishing items to inmates, the plain language of the prior version of OCGA § 42-6-18 (b), as quoted in Division 1, above, criminalizes more than one act. Each of the three counts under which Terrell was sentenced included allegations regarding a distinct category of contraband, which the statute prohibited Terrell from obtaining or procuring for inmates: methamphetamine (Count 2); a variety of items including telecommunications devices (cell phones) (Count 3); and a weapon (a Gerber knife) (Count 4). The statute's plain language separately criminalizes the obtaining or procuring of these distinct items.

Terrell argues that we should read the statute as simply prohibiting *any* item not authorized by the warden. Yet the statute unequivocally lists a variety of specific items, separated by semicolons, and Terrell was sentenced related to crimes involving distinct, separate items, identified in different statutory clauses.[6] "[R]eading the

_____

[6] By contrast, if Terrell had been sentenced on three counts, each of which involved the obtaining or procuring of a separate knife, for example, our analysis might be different. But she was not. See *Coates v. State*, 304 Ga. 329, 330-332 (818

10

statute as [Terrell] suggests would mean that there was no need to list them separately, and this Court avoids interpreting statutes in a manner that renders any portion of them surplusage or meaningless. . . . A statute is to be construed to give sensible and intelligent effect to all its provisions[.]" (Citation and punctuation omitted.) *Wetzel v. State*, 298 Ga. 20, 28 (3) (a) (779 SE2d 263) (2015). The trial court did not err in sentencing Terrell on all three counts. See *Eskew v. State*, 309 Ga. App. 44, 48-49 (4) (709 SE2d 893) (2011) (affirming trial court's decision not to merge, for sentencing purposes, two aggravated battery counts where the statute criminalized various actions, the indictment charged separate acts, and the evidence showed distinct acts of bodily harm). We find no error.

*Judgment affirmed. McFadden, C. J., and McMillian, P. J., concur.*

---

SE2d 622) (2018) (finding that the gravamen of OCGA § 16-11-131 (b) (2014)'s language prohibiting the possession of "any firearm" by a convicted felon criminalizes the possession of firearms by a convicted felon rather than the number of firearms possessed).