**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 18, 2015**

# In the Court of Appeals of Georgia

A14A1725. REINHARD v. THE STATE.

MILLER, Judge.

A jury convicted Andrew C. Reinhard of rape (OCGA § 16-6-1 (a) (1)), aggravated sexual battery (OCGA § 16-6-22.2 (b)), and four counts of child molestation (OCGA § 16-6-4 (a) (1)) against his daughter, as well as enticing a child for indecent purposes (OCGA § 16-6-5 (a)) and two counts of child molestation against his roommate's niece.[1] Reinhard appeals from the trial court's denial of his motion for new trial, contending that: (1) insufficient evidence supported the verdict; (2) the trial court should have excluded the testimony of two bolstering witnesses; (3)

---

[1] The jury also found Reinhard guilty of incest (OCGA § 16-6-22 (a) (1)), another count of child molestation, and statutory rape (OCGA § 16-6-3 (a)) against his daughter and the trial court merged these counts into Reinhard's rape conviction.

As to his roommate's niece, the jury found Reinhard not guilty of one count of child molestation and one count of enticing a child for indecent purposes.

the trial court erred in refusing to grant a mistrial after a witness testified that Reinhard's daughter suffered from post-traumatic stress disorder (PTSD); (4) the trial court erred in denying his request for a continuance or a mistrial based on the State's late disclosure of discovery; and (5) the trial court erred in denying his request for a mistrial based on the State's improper opening argument. For the reasons that follow, we affirm.

Viewing the evidence in the light most favorable to the jury's verdict,[2] the record shows that Reinhard's daughter and son lived with their mother and visited Reinhard on weekends. Reinhard's daughter, who was 13 years old at trial, testified that when she was 12 years old, Reinhard frequently asked her to undress in front of him and touched her in his bedroom at his home in Warner Robins. Reinhard touched, kissed, and licked his daughter's breasts on numerous occasions. Reinhard also grabbed his daughter's hand and made her touch his "thingy." Two or three times, Reinhard touched the inside and outside of her vagina with his finger. Reinhard also touched the inside and outside of her vagina with his penis more times than she could count. Reinhard's daughter told her father "no," but he would not stop. Reinhard's

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

daughter described how he got on top of her, put his "thingy" in her, far enough in that it hurt, and moved up and down.

Reinhard's son, who was ten years old at trial, saw his sister go into Reinhard's bedroom with Reinhard. The door to Reinhard's bedroom would be locked, Reinhard would tell his son not to come near the door, and Reinhard's son could hear his sister screaming and crying in the bedroom.

Approximately six weeks after the abuse began, Reinhard's daughter told her mother that Reinhard asked her to take off her clothes in front of him. When her mother confronted Reinhard, he said that he had his daughter take off her clothes, but that they were just playing around and "it got out of control." Shortly thereafter, Reinhard's daughter told her mother that Reinhard had touched her and her mother then called the police.

A forensic investigator interviewed Reinhard's daughter in November 2008. A recording of her forensic interview was played for the jury. Reinhard's daughter's therapist, who treated her for childhood sexual abuse, testified that Reinhard's daughter suffered from PTSD and that her symptoms – including aggression, withdrawal, and intrusive or recurring thoughts – were consistent with a child

experiencing serious trauma. Reinhard's daughter also disclosed to her therapist that Reinhard raped her and digitally penetrated her.

Reinhard's roommate's niece testified that Reinhard took her for a ride in his car in October 2008, when she was 14 years old. Reinhard pulled over on the side of the road, kissed her, told her that he wanted to see her breasts, and tried to put his hand in her shirt. Later that week, she rode in Reinhard's car again and he once again tried to get her to show him her breasts. They returned to his home and he kissed her on the lips. After the second incident, the roommate's niece told her aunt that Reinhard kissed her and told her to show him her breasts. She also told her grandmother what happened, and her mother ultimately learned about the abuse. When confronted by his roommate, Reinhard admitted to kissing her niece.

After the child's mother learned that Reinhard had been arrested, she reported what had happened to the police. A forensic investigator also interviewed Reinhard's roommate's niece, and a recording of her interview was also played for the jury.

A psychologist reviewed both girls' forensic interviews, as well as the police reports, and testified that each girl's demeanor and behavior during her interview was consistent with that of a child who had been molested.

4

1. Reinhard contends that insufficient evidence supported the verdict because there were no eyewitnesses to his abuse of his daughter, no DNA was recovered from her clothing, and he worked six days a week. We disagree.

(a) As to his daughter, Reinhard was charged with rape, aggravated sexual battery based on his act of placing his finger in her vagina, and four counts of child molestation.

To prove the offense of rape, the State must show that a defendant had "carnal knowledge of . . . a female forcibly and against her will." OCGA § 16-6-1 (a) (1). Reinhard's daughter testified that when she was 12 years old, Reinhard put his penis in her vagina more times than she could count. She told her father "no," but he would not stop. During her forensic interview, which was played for the jury, she described how Reinhard got on top of her and put his "thingy" in her, far enough in that it hurt, and he moved up and down.

"A person commits the offense of aggravated sexual battery when he intentionally penetrates with a foreign object the sexual organ or anus of another person without that person's consent." (Footnote omitted.) *Colton v. State*, 297 Ga. App. 795, 796 (1) (678 SE2d 521) (2009); see also OCGA § 16-6-22.2 (b). A person's finger may constitute a foreign object. See *Colton*, supra, 297 Ga. App. at

5

796 (1). Reinhard's daughter also testified that Reinhard touched the inside of her vagina with his finger two or three times.

"A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). Reinhard was charged with four counts of child molestation against his daughter. At trial, she testified that Reinhard asked her to undress in front of him more times than she could count, and he touched, kissed, and licked her breasts. During her forensic interview, she also described how Reinhard grabbed her hand and made her touch his "thingy."

(b) As to his roommate's niece, Reinhard was charged with one count of enticing a child for indecent purposes and two counts of child molestation based on his acts of kissing her and asking her to expose her breasts to him. A person commits the offense of child enticement when he solicits, entices, or takes a child under the age of 16 years to any place for the purpose of child molestation. See OCGA § 16-6-5 (a).

She testified that Reinhard took her for a ride in his car when she was 14 years old, pulled over on the side of the road, kissed her, and told her that he wanted to see

6

her breasts. On another occasion, Reinhard again tried to get her to show him her breasts. At his home, he kissed her on the lips.

(c) The victims' testimony alone is sufficient to sustain Reinhard's convictions. See *Newton v. State*, 296 Ga. App. 332, 335 (1) (a) (674 SE2d 379) (2009); see also OCGA § 24-4-8 (2010) (testimony of a single witness is sufficient). The witnesses to the victims' outcries, including Reinhard's daughter's mother and therapist and his roommate's niece's family members, also corroborated the victims' accounts. Furthermore, Reinhard admitted having his daughter undress in front of him and kissing his roommate's niece, and his son's testimony also corroborated his daughter's version of events. As to the lack of physical evidence or other eyewitnesses to the crimes, the "lack of [further] corroboration only goes to the weight of the evidence and the credibility of the testifying witness, which is solely within the purview of the jury." (Citation and punctuation omitted.) *Manuel v. State*, 289 Ga. 383, 385 (1) (711 SE2d 676) (2011). Accordingly, the evidence was sufficient to support all of Reinhard's convictions.

2. Reinhard contends that the trial court should have excluded the testimony of his daughter's therapist and the psychologist because their testimony bolstered the testimony of his daughter and of one another. We disagree.

We have held that the testimony of experts that certain medical or scientific tests resulted in findings consistent with molestation is admissible and proper. The fact that such testimony may also indirectly, though necessarily, involve the child's credibility does not render it inadmissible.

(Citations and punctuation omitted.) *Noe v. State*, 287 Ga. App. 728, 730 (1) (652 SE2d 620) (2007); see also *Odom v. State*, 243 Ga. App. 227 (1) (531 SE2d 207) (2000) ("[T]here is absolutely nothing wrong with expert opinion testimony that bolster's the credibility of the indicted allegations of sexual abuse, e.g., . . . the victim's psychological evaluation was consistent with sexual abuse.") (punctuation omitted).

Both the therapist and the psychologist testified that the victims' demeanor and behavior were consistent with sexual abuse. Specifically, the therapist testified that Reinhard's daughter's symptoms and behavior were consistent with a child experiencing serious trauma from sexual abuse. The psychologist testified that each girl's demeanor and behavior during her forensic interview was consistent with that of a child who had been molested. Accordingly, their testimony was properly admitted. See *Odom*, supra, 243 Ga. App. at 229 (1) (b) (holding admissible a doctor's testimony that victim's behavior was consistent with sexual abuse).

8

Moreover, we note that the trial court instructed the jury that it was for the jury to determine the credibility of the witnesses, and, specifically, it was for the jury, not any witness, to determine if Reinhard's daughter was credible.

Reinhard further asserts that the psychologist's testimony would only be admissible if the therapist or forensic examiners had been impeached. Expert testimony is permitted on the propriety and effect of interviewing techniques in child sexual abuse cases. See *Barlow v. State*, 270 Ga. 54, 55 (507 SE2d 416) (1998); *Ogle v. State*, 270 Ga. App. 248, 249 (2) (606 SE2d 303) (2004) (expert's opinion that victim's interview was consistent with one given by child who has been sexually abused left to jury issues of victim's credibility and whether sexual abuse actually occurred). Contrary to Reinhard's argument, there is no requirement that an interviewer be impeached before a trial court allows testimony regarding interviewing techniques.

3. Reinhard contends that the trial court erred in refusing to grant a mistrial based on the therapist's testimony that his daughter suffered from PTSD. We disagree.

"Whether to declare a mistrial is in the discretion of the trial court and will not be disturbed on appeal unless it is apparent that a mistrial is essential to the

9

preservation of the right to a fair trial." (Citations and punctuation omitted.) *Rafi v. State*, 289 Ga. 716, 720 (4) (715 SE2d 113) (2011).

Reinhard argues that the testimony was inadmissible because the State did not establish that the tests that the therapist administered to his daughter were admissible under *Harper v. State*, 249 Ga. 519, 524-525 (1) (292 SE2d 389) (1982).

> Under the longstanding precedent of [*Harper*,] scientific evidence is not admissible in criminal cases unless the procedure or technique in question has reached a scientific stage of verifiable certainty. . . . It is the role of the trial court to determine whether a scientific procedure or technique constitutes competent evidence under *Harper*, and the trial court's determination will not be disturbed absent a clear abuse of discretion. The trial court may make this determination from evidence presented to it at trial by the parties; in this regard expert testimony may be of value.

(Citations and punctuation omitted.) *Fortune v. State*, 304 Ga. App. 294, 298 (2) (696 SE2d 120) (2010).

Here, the therapist testified that her evaluations of children are based on her conversations with and observations of them, as well as standardized assessments and tests.[3] The therapist explained that the standardized assessments that she uses and that

---

[3] We note that expert testimony based solely on an expert's observations of physical objects does not generally constitute scientific evidence for purposes of

she administered to Reinhard's daughter can only be administered by credentialed therapists, after they have gone through a period of supervised use of the tests. The therapist had been administering these tests for more than five years. The tests are highly reliable; they are designed to give consistent results even if read by different people; they have been used by many people; and research shows that they are accurate and measure what they are designed to measure.[4] Additionally, one standardized assessment used in evaluating Reinhard's daughter, the Trauma Symptoms Checklist, has a built in validity scale that indicates whether a child is over-reporting or under-reporting. Reinhard cross-examined the therapist as to her qualifications, the assessments she used, and her treatment of his daughter.

The State established through the therapist's testimony that the use of these assessments has reached a scientific state of verifiable certainty justifying their admission. See *Morgan v. State,* 189 Ga. App. 795, 796 (2) (377 SE2d 707) (1989)

---

*Harper*. See *Belton v. State*, 270 Ga. 671, 673 (4) (512 SE2d 614) (1999) (expert's testimony regarding shoe print identification was based on observation, skill, and experience, not scientific principles, and was thus not subject to *Harper*).

[4] The therapist testified that she generally administers the Trauma Symptoms Checklist, the Child Sexual Behavior Inventory, and other inventories for youth, all of which are commonly used. She administered the Trauma Symptoms Checklist and the Beck Youth Inventory to Reinhard's daughter.

(doctor's testimony that scientific technique was routinely used and accepted within the medical profession was sufficient to show that technique was reliable under *Harper*). Accordingly, the trial court did not abuse its discretion in allowing the therapist to testify that she had diagnosed Reinhard's daughter with PTSD based, in part, on these tests. Since the evidence was admissible, a mistrial was not required to preserve Reinhard's right to a fair trial.

4. Reinhard contends that the trial court erred in refusing to grant a mistrial or a continuance after the State failed to turn over ten pages of notes from the therapist until just before trial began, in violation of the discovery statute. We discern no error.

Under the criminal discovery statute, the State must disclose, at least ten days prior to trial, any medical records or test results it plans to use against the defendant. OCGA § 17-16-4 (a) (4).

> If at any time during the course of the proceedings it is brought to the attention of the court that the [S]tate has failed to comply with the [discovery statute], the court may order the [S]tate to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the [S]tate from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

12

OCGA § 17-16-6.

> In enacting this statute, the legislature did not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the State for failure to comply with the discovery mandates. Instead, it cloaked the trial court with the discretion to use its own judgment to ensure a fair trial.

(Citation omitted.) *Jones v. State*, 290 Ga. 576, 577 (2) (722 SE2d 853) (2012).

Approximately two weeks prior to trial, as soon as the State learned that Reinhard's daughter had been seeing a therapist, the State gave notice that the therapist might testify. The State disclosed the therapist's notes shortly after receiving them. Before the therapist testified, Reinhard asked for a continuance on the grounds that trial counsel had not yet read the therapist's notes, which had been disclosed the previous day, and Reinhard had not had time to retain his own expert to review the notes. Although the trial court considered granting an overnight continuance, the therapist was due to leave the country the next day, and the trial court instead granted Reinhard a short continuance to read the therapist's notes before she testified. The trial court denied Reinhard's motion for a further continuance to retain an expert to review the notes. The trial court also denied Reinhard's subsequent motion for a mistrial.

13

Reinhard argues that the trial court erred in refusing to grant a mistrial based on the State's discovery violation. "[A] trial court may grant a mistrial for such a discovery violation only upon a showing by the defendant of both bad faith and prejudice or that a mistrial would otherwise be just under the circumstances." (Citations omitted.) *Prince v. State*, 295 Ga. 788, 794 (3) (764 SE2d 362) (2014). Here, Reinhard asserted no bad faith on the part of the State. Accordingly, the trial court did not abuse its discretion in denying Reinhard's mistrial request. See *Jones*, supra, 290 Ga. at 578 (where there was no showing of bad faith in State's untimely disclosure of a witness's statement, exclusion of testimony and mistrial were not available remedies).

Moreover, Reinhard has not shown that the trial court abused its discretion in granting him only a short continuance. The trial court gave Reinhard a limited continuance to review the materials, taking into account the fact that the witness would not be available the following day. See *Holmes v. State*, 284 Ga. 330, 332-333 (6) (667 SE2d 71) (2008) (trial court did not abuse its discretion in permitting witness to testify despite discovery violation where State disclosed witness's statement shortly after it learned of it and trial court gave defendant time to question the witness before he testified). Reinhard had notice two weeks before his trial began that the

14

therapist might testify, and in that time he could have retained an expert to counter the therapist's testimony. Instead, Reinhard waited until his trial had begun to request a continuance. Accordingly, the trial court did not abuse its discretion in denying Reinhard's motion for a further continuance to review the notes or obtain an expert.[5]

5. Reinhard contends that the trial court erred in denying his motion for a mistrial based on the State's improper opening argument. We discern no error.

During opening argument, the State argued that the therapist would testify that Reinhard's daughter suffered from PTSD and withdrew into herself after the abuse. Reinhard argues that the trial court should have given curative instructions or granted a mistrial in accordance with OCGA § 17-8-75.

OCGA § 17-8-75 provides that:

[w]here counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor

---

[5] Reinhard also argues that the trial court's failure to grant a longer continuance violated his right to confrontation since trial counsel did not have time to prepare to cross-examine the therapist. Reinhard has not shown, however, that his trial counsel's cross-examination was inadequate or pointed to any additional challenges that trial counsel should have raised on his behalf. See *Eskew v. State*, 309 Ga. App. 44, 46 (1) (709 SE2d 893) (2011). Under these circumstances, the trial court did not abuse its discretion in denying a longer continuance. See id.

to remove the improper impression from their minds; or, in [the court's] discretion, [the court] may order a mistrial if the prosecuting attorney is the offender.

A defendant must contemporaneously object to any alleged impropriety in opening argument so that the trial court can take remedial action, if any is warranted. See *Gomez v. State*, 315 Ga. App. 898, 899-900 (1) (728 SE2d 691) (2012). Reinhard did not object to the comments in the opening statement at the time they were made. Instead, he waited until the end of opening argument to raise his objection.

"Having failed to assert a contemporaneous objection, [Reinhard] has waived his right to complain about the remarks on appeal." (Citation omitted.) *Gomez*, supra, 315 Ga. App. at 900 (1). Moreover, even assuming the State's comments were prejudicial and that Reinhard had not waived the issue, it is highly unlikely that any alleged error in failing to give a curative instruction or grant a mistrial contributed to the jury's verdict since the trial court instructed the jury that opening statements are not evidence. See id. Essentially, the trial court did not abuse its discretion in denying Reinhard's motion for a mistrial.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur*.