**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 10, 2019**

# In the Court of Appeals of Georgia

A19A1247. CHITWOOD v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Jonathan Chitwood was convicted of one count of aggravated sexual battery (OCGA § 16-6-22.2) and three counts of child molestation (OCGA § 16-6-4 (a)). Chitwood appeals from the denial of his motion for new trial, arguing that (1) the evidence was insufficient to support his convictions; (2) the trial court failed to fulfill its role as the "thirteenth juror" in adjudicating his motion for new trial; (3) the trial court erred by admitting prior bad act evidence into evidence during trial; and (4) his trial counsel rendered ineffective assistance. For the reasons that follow, we conclude that the evidence was insufficient to sustain two of Chitwood's child molestation convictions, but we otherwise affirm his convictions and total sentence.

Viewed in the light most favorable to the verdicts,[1] the evidence adduced at trial showed that on May 21, 2015, April Chitwood, who was Chitwood's wife and the minor victim's mother, left her residence to go to the store. Upon her return from the store, she went inside her bedroom and saw Chitwood lying in the bed with their six-year-old daughter, who was sleeping. She observed that Chitwood was not wearing his boxers and that their daughter's underwear had been pulled down. According to April, their daughter woke up screaming that her father had hurt her. Specifically, the victim said that while she was alone with Chtiwood in her mother's bedroom, Chitwood touched her on her "wrong spot," and that it "felt bad" when Chitwood touched it.[2] When April questioned Chitwood about their daughter's claims, Chitwood told April to shut up and leave him alone. April carried their daughter from the bedroom to the living room and tried to call for help but was unable to because Chitwood had her phone. Chitwood told April that if she called anyone that she would regret it. April posted a message on a Facebook group asking for help. An employee with the Department of Family and Children Services

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979)

[2] The victim was given an anatomical drawing during a forensic interview, and she circled the vagina and identified it as the place where Chitwood touched her.

2

("DFCS") received an anonymous report about April's Facebook post, contacted law enforcement, and went to April's residence and spoke with her about the incident. After speaking with April, the DFCS worker asked Chitwood to leave the residence, and he complied.

The victim was examined by a nurse who specialized in sexual assault cases, and the examination revealed a significant amount of redness inside and outside of the labia majora and minora. The examination also revealed irregularities with the victim's rectum. The nurse concluded that, based on her examination of the victim, the victim's injuries raised suspicions of sexual assault. Additionally, a program manager for the Harbor House, which is a child advocacy center, conducted a forensic interview with the victim where the victim recounted the details of the incident involving Chitwood. The video recording of the forensic interview was entered into evidence and played for the jury trial. The State also presented similar transaction evidence from a sheriff's deputy who testified that, in 2008, he investigated claims that Chitwood molested his five-year-old cousin. Specifically, Chitwood's cousin told the sheriff that Chitwood had touched her under her clothing on her "pee-pee" area. A medical examination of Chitwood's cousin also raised "suspicions" of sexual

abuse. The State entered into evidence a certified copy of Chitwood's conviction for sexual battery of a minor for the 2008 case.

Chitwood was indicted on one count of aggravated sexual battery (OCGA § 16-6-22.2) and three counts of child molestation (OCGA § 16-6-4 (a)). The jury found Chitwood guilty of all counts, and he was sentenced to life imprisonment, with an additional twenty-year prison sentence. Chitwood filed a motion for new trial, which the trial court denied. This appeal followed.

1. First, Chitwood argues that the evidence was insufficient to support his convictions. We agree as to Counts 3 and 4 of the indictment, but we disagree as to Counts 1 and 2.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citation omitted.) *Harvey v. State*, 344 Ga. App. 761, 763 (811 SE2d 479) (2018).

*(a) Aggravated Sexual Battery*

"A person commits the offense of aggravated sexual battery when he intentionally penetrates with a foreign object the sexual organ or anus of another person without that person's consent." (Citation omitted.) *Reinhard v. State*, 331 Ga. App. 235, 237 (1) (a) (770 SE2d 314) (2015). "The Code section defines 'foreign object' as any article or instrument other than the sexual organ of a person. A finger is considered a foreign object under OCGA § 16-6-22.2 (a)." (Citation and punctuation omitted.) *Williams v. State*, 347 Ga. App. 6, 8 (1) (815 SE2d 590) (2018). Also, "[p]enetration however slight will suffice to satisfy the statutory penetration element of OCGA § 16-6-22.2 and penetration may be proved by indirect or circumstantial evidence." (Citation and punctuation omitted.) *Madison v. State*, 329 Ga. App. 856, 863 (1) (c) (766 SE2d 206) (2014). Furthermore,

> witnesses are not required to describe the acts constituting the commission of crimes in statutory or technical language in order to prove the commission of such acts. Rather, the terms used by witnesses to describe criminal acts may be considered in context to provide meaning, and jurors can be presumed to have some knowledge of slang expressions in common parlance in the vernacular.

5

(Citation omitted.) *Smith v. State*, 320 Ga. App. 408, 410-411 (1) (a) (740 SE2d 174) (2013).

Here, April testified that the victim told her that Chitwood had hurt her by touching her vagina, which she referred to as her "wrong spot." The victim also testified against Chitwood at trial, and told the jury that Chitwood touched her wrong spot and that it "felt bad" when he touched it. A program manager for the Harbor House testified that he conducted a forensic interview with the victim and that the victim recounted the details of the incident involving Chitwood. Also, the victim was examined by a nurse who specializes in sexual assault cases, and the examination revealed a significant amount of redness inside and outside of the labia majora and minora. Based upon the victim's examination, the victim's injuries raised suspcions that the victim had been sexually assaulted. We conclude that this evidence was sufficient for a rational trier of fact to find that Chitwood committed the offense of aggravated sexual battery. See *Tudor v. State*, 320 Ga. App. 487, 489-490 (1) (740 SE2d 231) (2013) (holding that the evidence was sufficient to support the defendant's conviction for aggravated sexual battery where the victim testified that defendant had placed his finger in her anus and physical evidence obtained from a medical

examination of the victim was consistent with sexual battery). Accordingly, we affirm Chitwood's conviction for aggravated sexual battery.

## (b) Child Molestation

"A person commits the offense of child molestation when such person does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." (Citation omitted.) *Reinhard*, supra, 331 Ga. App. at 237 (1) (a). In explaining an "immoral or indecent act" for purposes of child molestation, we have held that

> [i]mmoral or indecent acts constituting child molestation refer to acts which offend against the public's sense of propriety as well as to acts more suggestive of sexually oriented misconduct to a child's body than simply assaultive in nature. An act generally viewed as morally and sexually indelicate, improper and offensive can constitute child molestation. Whether an act is immoral or indecent is a jury question.

(Citations omitted.) *Thomas v. State*, 324 Ga. App. 26, 27-28 (748 SE2d 509) (2013).

### (i) Count 2

In Count 2 of the indictment, the State alleged that Chitwood committed child molestation in that he "did commit an immoral and indecent act to [the victim], a

child under the age of sixteen years, with the intent to arouse and satisfy the sexual desires of said accused by touching said child's primary genital area. . . ."

Here, the victim testified at trial that her father touched her on her "wrong spot." The victim indicated on an anatomical drawing that her "wrong spot" was her vagina. The victim also recounted the allegations to her mother and a program manager during a forensic interview. Therefore, based on the victim's testimony as well as the testimony of the witnesses with whom she discussed the incident, the evidence was sufficient for a rational trier of fact to have found Chitwood guilty of child molestation as alleged in Count 2 of the indictment. See *Lilly v. State*, 285 Ga. App. 427, 428-429 (646 SE2d 512) (2007) (holding that the evidence was sufficient to support child molestation conviction based on victim's testimony that her uncle touched her "privates").[3]

---

[3] We note that Chitwood's conviction for this count of child molestation did not merge with his conviction for aggravated sexual battery. See *Gaston v. State*, 317 Ga. App. 645, 650-651 (3) (731 SE2d 79) (2012) (holding that the defendant's convictions for aggravated sexual battery and child molestation based upon his single act of touching and penetrating the victim's vagina did not merge because "child molestation required proof that [the defendant] committed an immoral and indecent act with the intent to arouse and satisfy his sexual desires, whereas the charged offense of aggravated sexual battery did not. And the charged offense of aggravated sexual battery required proof of penetration, whereas the charged offense of child molestation did not.").

*(ii) Count 3*

In Count 3, the State alleged that Chitwood "did commit an immoral and indecent act in the presence of [the victim], a child under the [age] of sixteen years, with the intent to arouse and satisfy the sexual desires of said accused by exposing said child'[s] primary genital area. . . ."

Here, April testified that when she entered her bedroom, she saw Chitwood lying in bed with the victim and that the victim "had her gown up" and her underwear had been pulled down. We also note that the victim said that during the incident her clothes had been pulled up to her neck. There was, however, no evidence presented at trial to show that the victim's "primary genital area," as opposed to her buttocks, had been exposed as alleged in the indictment.[4] The State also did not elicit any testimony as to what position the victim had been laying in the bed, which, depending on the position, could have led to an inference that the victim's genital area was exposed. Indeed, the trial transcript shows that the State did not question any of its witnesses as to whether the victim's genital area had been exposed during the incident. Moreover, April provided no testimony as to the position of the victim's

[4] We have previously stated in other child sexual abuse cases that "the terms 'genitals' and 'pubic area' . . . do not include buttocks or breasts. . . ." *Weyer v. State*, 333 Ga. App. 706, 711 (1) (b) (776 SE2d 304) (2015).

underwear before she left the residence. Compare *Lipscomb v. State*, 315 Ga. App. 437, 438-439 (1) (727 SE2d 221) (2012) (holding that evidence was sufficient for child molestation conviction based on the defendant's act of removing the victim's underwear, where the victim's mother testified that the victim was wearing her underwear properly before the mother left the house and that upon her return twenty minutes later, the victim was wearing her underwear "sideways"). Thus, the State failed to put forth any evidence that Chitwood exposed the victim's genital area, as was alleged in the indictment. Accordingly, we conclude that the evidence was insufficient to sustain Chitwood's conviction for child molestation (Count 3) as alleged in the indictment, and we reverse Chitwood's conviction for this offense.

*(iii) Count 4*

In Count 4, the State alleged that Chitwood committed child molestation in that he "did commit an immoral and indecent act in the presence of [the victim], a child under the age of sixteen years, with the intent to arouse and satisfy the sexual desires of said accused by exposing his penis in said child's presence. . . ."

Here, the testimony elicited by the State from its witnesses showed that when April entered into the bedroom, she observed Chitwood lying in the bed with his "boxers down." However, the State failed to elicit testimony from any of its witnesses

10

as to whether Chitwood's penis had been exposed in the victim's presence as alleged in the indictment. Indeed, the trial transcript reflects that the State never asked any of its witnesses whether Chitwood's penis had been exposed in the victim's presence at the time of the incident. Moreover, the DFCS worker testified that she did not "recall the length of how far [April] said his pants were down." Thus, the State did not present any evidence to show that Chitwood's penis had been exposed in the victim's presence at the time of the incident as was alleged in the indictment. Compare *Sowell v. State*, 327 Ga. App. 532, 535 (1) (759 SE2d 602) (2014) (holding that evidence was sufficient to sustain conviction for child molestation based upon the defendant's act of exposing his penis to the victim where the victim's mother testified that the defendant hurriedly placed his genitals back in his pants when the mother suddenly entered the bedroom). Accordingly, we conclude that the evidence was insufficient to sustain Chitwood's conviction for child molestation (Count 4) as alleged in the indictment, and we reverse Chitwood's conviction for this offense.

2. Next, Chitwood argues that the trial court erred in denying his motion for new trial because the trial court failed to fulfill its role as the "thirteenth juror" in adjudicating his motion.

As explained by the Georgia Supreme Court,

11

the trial court need not explicitly speak of its discretion with respect to the general grounds, and unless the record shows otherwise, we must presume that the trial court understood the nature of its discretion and exercised it. This Court will thus presume, in the absence of affirmative evidence to the contrary, that the trial court did properly exercise such discretion.

(Citation omitted.) *Wilson v. State*, 302 Ga. 106, 108 (II) (a) (805 SE2d 98) (2017).

As stated in Division 1, the evidence was insufficient to sustain Chitwood's convictions for child molestation (Count 3) and child molestation (Count 4), and we therefore reverse Chitwood's convictions for those offenses because of the State's complete lack of evidence at trial. With regard to the remaining counts on which Chitwood was convicted, we will presume the trial court properly exercised its discretion as the thirteenth juror.

3. Chitwood further argues that the trial court erred by admitting testimony and evidence of a prior bad act during trial. Specifically, Chitwood argues that the trial court erred by admitting the certified copy of his prior conviction for sexual battery of a minor into evidence and also erred by admitting hearsay testimony from the sheriff's deputy as to the circumstances surrounding the prior case and the five-year-old victim's allegations and that the evidence improperly attacked his character.

(a) As for Chitwood's claim pertaining to the admission of the certified copy of conviction for the sexual battery of a minor offense, this claim of error has no merit. "We will not disturb a trial court's ruling regarding the admissibility of similar transaction evidence absent an abuse of discretion." (Citation omitted.) *Lee v. State*, 306 Ga. App. 144, 145 (2) (701 SE2d 582) (2010). OCGA § 24-4-414 (a) provides that

> [i]n a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant.

For purposes of this statute, "offense of child molestation" means, in part, "[a]ny crime that involves contact between any part of the accused's body or an object and the genitals or anus of a child. . . ." OCGA § 24-4-414 (d) (2). Also, a certified copy of conviction is evidence of the prior bad act. See e.g., *Spradling v. State*, 310 Ga. App. 337, 338-339 (715 SE2d 672) (2011) ("It is well established, however, that in cases involving sexual offenses against children, a certified copy of a prior conviction for a sex crime against a child may, with no other evidence, sufficiently prove that the prior crime is similar to the current crime."). Furthermore, under OCGA § 24-4-414 (a), we have explained that

showing a disposition toward molestation is a relevant purpose and not unfairly prejudicial in light of the nature of that conduct. Thus, evidence that a defendant engaged in child molestation in the past is admissible to prove that the defendant has a disposition of character that makes it more likely that he did commit the act of child molestation charged in the instant case.

(Citations omitted.) *Robinson v. State*, 342 Ga. App. 624, 634 (4) (a) (805 SE2d 103) (2017).

Here, as part of its presentation of Chitwood's prior bad act, the State entered into evidence a copy of the indictment in the 2008 case, which alleged that Chitwood committed the offense of child molestation in that he "did commit an immoral and indecent act to [the victim], a minor child born on November 22, 2001, with the intent to arouse and satisfy the sexual desires of said accused by touching the vaginal area of said child with the hand of said accused. . . ." The State also entered into evidence a certified copy of conviction for that case showing that Chitwood pleaded guilty to the lesser offense of sexual battery of a minor (OCGA § 16-6-22.1).[5] Accordingly, as

[5] Under OCGA § 16-6-22.1 (b), "[a] person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person. OCGA § 16-6-22.1 (a) defines "intimate parts" as "the primary genital area, anus, groin, inner thighs, or buttocks of a male or female and the breasts of a female[,]" and OCGA § 16-6-22.1

14

the certified copy of conviction was evidence of Chitwood's prior bad act in accordance with OCGA § 24-4-414 (a), he cannot show that the trial court abused its discretion by admitting the conviction into evidence. See *Spradling*, supra, 310 Ga. App. at 338-339.

(b) Similarly, Chitwood's claims that the trial court erred in allowing the deputy to testify to what the victim of the prior bad act case told the deputy about the incident and about statements Chitwood made during an interview in that case also fails.[6] First, we note that while Chitwood raised a general objection to the admission of the prior bad act evidence, Chitwood did not raise a specific objection as to the deputy's testimony about the victim's allegations and statements made by Chitwood during an interview with police. Therefore, we review this particular claim for plain error only. *Gates v. State*, 298 Ga. 324, 326 (3) (781 SE2d 772) (2016). To show plain error,

> [f]irst, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned,

---

(d) makes sexual battery a felony offense if committed against a child under 16 years of age.

[6] During an interview with the deputy, Chitwood initially denied touching the victim but later said that he could have touched the victim by accident.

15

i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citations and punctuation omitted.) Id. at 327 (3).

In light of the aforementioned principles, we conclude that Chitwood cannot demonstrate plain error. The transcript shows that prior to the State's admission of Chitwood's sexual battery of a minor conviction, Chitwood cross-examined his wife about the case and conviction as well as the sentence he received in that case after he pled guilty. Furthermore, the evidence surrounding Chitwood's convictions for aggravated battery (Count 1) and child molestation (Count 2) was overwhelming. As stated in Division 1, the victim testified at trial that Chitwood touched her "wrong spot," and a nurse specialized in sexual assault cases testified that the victim's injuries were consistent with sexual abuse. Moreover, the victim's mother as well as a DFCS worker and a forensic program manager also testified about the victim's

allegations against Chitwood. A certified copy of the indictment, which detailed the allegations in the prior case, along with a certified copy of the conviction were also entered into evidence for the jury's review. Thus, Chitwood cannot show that the alleged errors in the deputy's testimony affected his substantial rights, so as to affect the outcome of the trial proceedings. See *Gates*, supra, 298 Ga. at 327-328 (3) (holding that the defendant could not show plain error from the admission of testimony about other acts constituted plain error where the evidence of the defendant's guilt was overwhelming and thus the defendant could not show that the admission of the evidence affected the outcome of his trial).

4. Lastly, Chitwood argues that his trial counsel was ineffective for failing to object to testimony given by the DFCS worker and a sheriff's deputy. . Specifically, Chitwood claims that trial counsel was ineffective because the testimony by both the DFCS worker and the sheriff's deputy as to what April told them on the night of the incident was inadmissible and did not meet the criteria as a prior consistent statement and improperly bolstered April's testimony. This claim of error, however, also fails.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the

17

deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. If an appellant fails to meet his or her burden of proving either prong of the *Strickland*[7] test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citation omitted.) *Bearden v. State*, 316 Ga. App. 721, 725 (3) (728 SE2d 874) (2012).

We conclude that, even if trial counsel was deficient for failing to object to the testimony of the DFCS worker and the deputy as to what April told them about the incident,[8] Chitwood cannot show that he was prejudiced by trial counsel's alleged deficiency. As recounted in Division 1, the evidence of Chitwood's guilt for

---

[7] *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[8] Chitwood does not specifically identify the objectionable testimony in his appellate brief.

aggravated sexual battery (Count 1) and child molestation (Count 2) was overwhelming. The victim testified at trial that Chitwood touched her "wrong spot," and a nurse who specialized in sexual assault cases testified that the victim's injuries were consistent with sexual abuse. Moreover, the victim's mother as well as a DFCS worker and a forensic program manager also testified about the victim's allegations against Chitwood. Consequently, even if trial counsel was deficient for failing to object to the testimony given by the deputy and the DFCS worker, Chitwood cannot show a reasonable likelihood that the outcome at trial would have been different. Accordingly, Chitwood's ineffective assistance of counsel claim fails.

Accordingly, for the reasons stated above, we affirm the trial court's order denying Chitwood's ineffective assistance of counsel claim and Chitwood's claim that the prior bad act evidence was inadmissible. We also conclude that the evidence was sufficient to support his convictions for aggravated sexual battery (Count 1) and child molestation (Count 2), but we reverse his convictions for child molestation as set forth in Count 3 and Count 4 of the indictment and we vacate the sentences entered on these counts.

*Judgment affirmed in part and reversed in part. Rickman and Reese, JJ., concur.*